[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 415.]

INTERNATIONAL THOMSON PUBLISHING, INC., D.B.A. SOUTH-WESTERN PUBLISHING COMPANY, APPELLANT, *v*. TRACY, TAX COMMR., APPELLEE.

[Cite as *Internatl. Thomson Publishing, Inc. v. Tracy*, 1997-Ohio-138.]

*Taxation—Use tax on free textbooks sent to out-of-state teachers and professors for examination—Taxable "use," when.*

(No. 96-2153—Submitted April 23, 1997—Decided September 24, 1997.)

APPEAL from the Board of Tax Appeals, Nos. 94-T-1078 and 94-T-1079.

———————————

{¶ 1} International Thomson Publishing, Inc., d.b.a. South-Western Publishing Co. ("South-Western"), appellant, purchases and resells textbooks to elementary schools, secondary schools, and colleges. It orders books from both Ohio and non-Ohio publishers; twenty-five percent of these books come from Ohio publishers. South-Western claims exception from the sales tax under the purchase-for-resale exception of R.C. 5739.01(E)(1) when it orders the books. South-Western receives the book orders at its Cincinnati warehouse about six months after it places the orders.

{¶ 2} To promote sales, South-Western's field representatives offer free textbooks, which it calls "exam copies," to teachers and professors so they can examine the books. The representatives, under the direction of South-Western's branch managers, and, ultimately, South-Western Cincinnati headquarters, select who should receive the exam copies.

{¶ 3} When South-Western receives the shipment of books, which includes enough books to fill its expected exam-copy requests, it removes the exam copies from the inventory and sends them to the teachers. Sometimes, South-Western receives exam-copy requests after it receives the book order; it fills these requests

in the same manner. South-Western fills the exam-copy requests in approximately three to ten days.

{¶ 4} The Tax Commissioner, appellee, audited South-Western. He did not dispute the resale-exception claim for books sold to schools. However, he concluded that South-Western exercised a power incidental to ownership over the exam copies by removing them from inventory and sending them to teachers. Consequently, he assessed $117,918.79, plus interest, in use tax against South-Western for its use of the exam copies, relating to the period of January 1989 through June 1990, and $215,157.32, plus interest, relating to the period of July 1990 through December 1992.

{¶ 5} South-Western appealed the commissioner's orders to the Board of Tax Appeals ("BTA"). However, the BTA affirmed the commissioner's orders. The BTA found that South-Western used the exam copies in a taxable manner, resulting, thus, in a taxable event. The BTA reached this conclusion because South-Western:

"(1) [R]eceived orders for exam copies at its Ohio facility; (2) created and maintained, in Ohio, a data base specifically for use in distributing exam copies; (3) centrally ordered books from publishers located both in and outside of Ohio; (4) received and held the books in its Ohio warehouse; (5) printed labels generated by its data base; (6) physically removed exam copies from the pallets containing both exam and inventory books; (7) packaged the exam copies, attaching the mailing label thereto; and (8) placed the exam copies into the mail. Regardless of how the books were ordered, stored, or accounted for in the corporate ledger, South-Western used the exam copies in a manner consistent with the definition of 'use.' Thus a taxable use, and a taxable event, has occurred in Ohio."

{¶ 6} Next, the BTA determined that the taxes assessed against South-Western satisfied the four-prong test set forth in *Complete Auto Transit, Inc. v. Brady* (1977), 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326. First, the BTA found

that the credit granted for tax paid to other states satisfied the fair-apportionment test. Next, the BTA ruled that the use tax is not discriminatory under the third prong of the *Complete Auto Transit* test because the tax is equivalent to the sales tax, compensating the state to the same extent as the sales tax in similar in-state transactions. The BTA also found that the tax is fairly related to the benefits provided to South-Western by the state because South-Western receives fire and police protection and benefits from other publicly provided amenities.

**{¶ 7}** Finally, the BTA concluded that the tax has substantial nexus to South-Western's use of the exam copies in Ohio. According to the BTA, South-Western controlled the disposition of the exam copies from Ohio. South-Western's employees in Cincinnati controlled the ordering system for the exam copies, and it also maintained the data base in Ohio. South-Western centrally ordered the books from Ohio, received and stored them in Ohio, and removed the exam copies from the storage pallets. Finally, South-Western packaged the copies and sent them from Ohio to the selected teachers and professors.

**{¶ 8}** This cause is now before this court upon an appeal as a matter of right.

———————————

*Morrison & Foerster, L.L.P., Hollis L.. Hyans* and *Michael A. Pearl; Baker & Hostetler, L.L.P., Christopher J. Swift* and *George H. Boerger*, for appellant.

*Betty D. Montgomery,* Attorney General, and *Barton A. Hubbard,* Assistant Attorney General, for appellee.

———————————

***Per Curiam.***

**{¶ 9}** We find the BTA's decision is reasonable and lawful and, thus, affirm it.

**{¶ 10}** South-Western first argues that no taxable event occurs when it withdraws the exam copies from its resale inventory and gives them to out-of-state

recipients. Nevertheless, we agree with the commissioner that South-Western's handling of these books in Ohio constituted a taxable event.

**{¶ 11}** In *Norandex, Inc. v. Limbach* (1994), 69 Ohio St.3d 26, 29-30, 630 N.E.2d 329, 332, we held, for cases involving the dormant Commerce Clause, that:

"[W]e must find a taxable event, in this case a use of the property, and apply the *Complete Auto Transit* test. *D.H. Holmes Co., Ltd. v. McNamara* (1988), 486 U.S. 24, 31, 108 S.Ct. 1619, 1623, 100 L.Ed.2d 21, 27.

"R.C. 5741.02(A) levies 'an excise tax * * * on the storage, use, or other consumption in this state of tangible personal property or the benefit realized in the state of any service provided.' R.C. 5741.01(C) defines: 'use' as 'the exercise of any right or power incidental to the ownership of the thing used.'"

**{¶ 12}** As the BTA found, a taxable event occurred here. Probative evidence supports the BTA's findings that South-Western received orders for exam copies in Ohio. In fact, it controlled the ordering of exam copies from Ohio. It established a data base with which to distribute the exam copies, and it centrally ordered books from Ohio. South-Western received and held the books in its Ohio warehouse and distributed the books to the recipients. To distribute them it removed the books from storage, printed labels, affixed the labels to packages containing the exam copies, and arranged for the delivery of the packaged books to the recipients.

**{¶ 13}** These activities mirror what Norandex did with its sample cases. In *Norandex*, branch employees requested the Ohio headquarters to purchase sample cases, and Norandex purchased the cases centrally from its Ohio office. "Norandex held the sample cases, decided the sequence in which the branches would receive the cases, removed the cases from the pallets to place on trucks, and directed a carrier to deliver the cases to the branch offices." 69 Ohio St.3d at 30, 630 N.E. 2d at 333.

**{¶ 14}** As we found in *Norandex*, South-Western exercised rights or powers incidental to ownership of the exam copies in Ohio and occasioned a taxable event in Ohio.

**{¶ 15}** Moreover, we have held these types of activities subject to the use tax since *Women's Internatl. Bowling Congress, Inc. v. Porterfield* (1971), 25 Ohio St.2d 271, 54 O.O.2d 383, 267 N.E.2d 781, paragraph three of the syllabus. Thus, the commissioner, contrary to South-Western's contention, could assess tax against the use of these books without further authority from amendments to R.C. 5741.01(C) or 5741.02(D). See *Midwest Foundation Indep. Physicians Assn. v. Tracy* (1996), 74 Ohio St.3d 221, 658 N.E.2d 263.

**{¶ 16}** We also reject South-Western's argument that R.C. 5741.01(G)(4) provides an alternate purchase price for the use of these copies. This provision states that the price for an item, held in inventory in Ohio for sale or lease that is temporarily stored, used, or otherwise consumed in a taxable manner, is the value of the temporary use. Here, though, the use of the books is not temporary; the use is permanent, since South-Western has relinquished ownership over the copies by giving them to teachers and professors.

**{¶ 17}** Next, South-Western argues that the tax fails the substantial nexus, the non-discrimination, and the fair-apportionment branches of the *Complete Auto Transit* test. We disagree.

**{¶ 18}** In *Complete Auto Transit, Inc. v. Brady,* 430 U.S. at 279, 97 S.Ct. at 1079, 51 L.Ed.2d at 331, the United States Supreme Court declared that it has "sustained a tax against Commerce Clause challenge when the tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State."

**{¶ 19}** Under *Norandex*, the taxed activity in this case, the use of the exam copies in Ohio, has a substantial nexus with Ohio. South-Western, as the BTA

found, established the ordering system and controlled it from Ohio, centrally ordered the books in issue, received and stored them in Ohio, removed them from inventory, and arranged to deliver them inside and outside Ohio. These taxed activities are economically significant activities, they occurred in Ohio, and they satisfy the substantial nexus prong.

{¶ 20} Under the non-discrimination branch, South-Western argues that the purchase of Ohio-produced exam copies would be exempt from the sales tax under R.C. 5739.02(B)(21), and hence the use tax under R.C. 5741.02(C)(2), and that to fail to exempt purchases of exam copies produced by non-Ohio publishers discriminates against these latter purchases. R.C. 5739.02(B)(21) states:

"The tax does not apply to the following:

"* * *

"(21) Sales of tangible personal property, manufactured in this state, if sold by the manufacturer in this state to a retailer for use in his retail business outside of the state and if possession is taken from the manufacturer by the purchaser within this state for the sole purpose of immediately removing the same from this state in a vehicle owned by the purchaser[.]"

{¶ 21} This exemption does not describe South-Western's operations. South-Western purchases books and stores them in Ohio pending distribution. It does not immediately remove them from Ohio in its vehicles. Thus, the tax does not discriminate on this basis.

{¶ 22} Finally, as to the fair-apportionment prong, *Oklahoma Tax Comm. v. Jefferson Lines, Inc.* (1995), 514 U.S. 175, 185, 115 S.Ct. 1331, 1338, 131 L.Ed.2d 261, 271-272, explained the required inquiry in some detail:

"[The court assesses] any threat of malapportionment by asking whether the tax is 'internally consistent' and, if so, whether it is 'externally consistent' as well. * * * Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add no burden to interstate commerce

6

that intrastate commerce would not also bear. This test asks nothing more about the degree of economic reality reflected by the tax, but simply looks to the structure of the tax at issue to see whether its identical application by every State in the union would place interstate commerce at a disadvantage as compared with commerce intrastate. A failure of internal consistency shows as a matter of law that a State that is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such a tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax. * * *

"External consistency, on the other hand, looks not to the logical consequences of cloning, but to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State. * * * Here, the threat of real multiple taxation (though not by literally identical statutes) may indicate a State's impermissible overreaching. * * *"

**{¶ 23}** As to internal consistency of the tax in the instant case, if every state were to impose a tax identical to the instant tax on this activity, a person exercising a power over property in giving the property away, only one tax would be imposed. South-Western can exercise this power only once; it has no power over property it has already given away. Thus, the instant tax survives the internal consistency test.

**{¶ 24}** As to the external consistency test, *Jefferson Lines* continues:

"A sale of goods is most readily viewed as a discrete event facilitated by the laws and amenities of the place of sale, and the transaction itself does not readily reveal the extent to which completed or anticipated interstate activity affects the value on which a buyer is taxed. We have therefore consistently approved taxation of sales without any division of the tax base among different States, and have instead held such taxes properly measurable by the gross charge for the purchase, regardless of any activity outside a taxing district that might have preceded the sale

or might occur in the future." *Id.* at 186, 115 S.Ct. at 1339, 131 L.Ed.2d at 272-273.

**{¶ 25}** We have consistently ruled the use tax to be externally consistent, and, thus, fairly apportioned, because R.C. 5741.02(C)(5) provides a credit for taxes paid to another jurisdiction. *Quotron Systems, Inc. v. Limbach* (1992), 62 Ohio St.3d 447, 449, 584 N.E.2d 658, 660; *PPG Industries, Inc. v. Tracy* (1996), 74 Ohio St.3d 449, 452, 659 N.E.2d 1250, 1251-1252. We rule so again.

**{¶ 26}** Accordingly, we affirm the BTA's decision because it is reasonable and lawful.

*Decision affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____