Gerhard H. Kaup, for respondent.

GENERAL MOTORS CORPORATION, APPELLANT,
*v.* WILKINS, TAX COMMR., APPELLEE.

**[Cite as *Gen. Motors Corp. v. Wilkins,*
102 Ohio St.3d 33, 2004-Ohio-1869.]**

(No. 2002–1894—Submitted December 16, 2003—Decided April 28, 2004.)

FRANCIS E. SWEENEY, SR., J.

{¶ 1} General Motors Corporation ("GM") appeals from a Board of Tax Appeals ("BTA") decision affirming use-tax assessments against GM for amounts it paid for parts and services provided by GM's Ohio dealers to repair motor vehicles under GM's warranty and special-policy repair programs.

{¶ 2} Agreements between GM and its dealers, entitled "Dealer Sales and Service Agreements," provided that the dealers would perform all repairs covered by warranty or a repair program on each qualified vehicle, using only GM-approved parts. The services and parts provided by the dealers in fulfilling the repairs covered by warranty and repair programs were then charged to GM based on prices set by GM in its Service Policies and Procedures Manual. The dealers were reimbursed by GM for the parts and labor by credits to their GM accounts.

{¶ 3} The Tax Commissioner levied two use-tax assessments against GM. One assessment was based on the amount that GM reported it had paid dealers for warranty and repair-program parts and services for the month of January 1993, the other was for the month of January 1994. GM filed petitions for reassessment with the Tax Commissioner.

{¶ 4} In its petitions for reassessment, GM contended that it did not acquire title or possession of or use any of the tangible personal property or services that

were the subject of the use tax. The Tax Commissioner rejected that contention based on the definition of "use" in R.C. 5741.01, which "includes the exercise of any right or power incidental to the ownership of the thing used." The Tax Commissioner found that "[i]n directing the dealers to provide repair parts and services to vehicle owners, and agreeing to pay the dealers for the parts and services GM * * * exercised a right incidental to the ownership of the parts and services."

{¶ 5} GM next contended that if any sales of repair parts and services were made in fulfilling the warranty agreements, such sales were made directly to the owners of the vehicles and not to GM. The Tax Commissioner rejected that contention, stating that the warranty agreement was between GM and the vehicle owner, not between the dealer and the vehicle owner. The Tax Commissioner further found that GM purchased the repair parts and services from its dealers and consumed those parts and services in fulfilling its contractual obligations to the vehicle owners. GM alternatively contended that if it was the consumer of the parts and services, then such parts and services were purchased for resale to the vehicle owners. The Tax Commissioner rejected that contention, stating that R.C. 5739.01(D)(4) provides that the purchase by a warrantor of property and services to be used in fulfilling a warranty contract is not a purchase for resale and that although R.C. 5739.01(D)(4) was not effective until July 1, 1993, the enactment was a clarification rather than a change in the law.

{¶ 6} GM also contended that since the motor vehicles being repaired were registered by their owners, they were excluded from the definition of personal property in R.C. 5701.03(A). The Tax Commissioner found that the exclusion in R.C. 5701.03(A) for motor vehicles registered by their owners was applicable only to ad valorem taxes.

{¶ 7} Finally, GM contended that the imposition of the use tax on parts and services made under warranty agreements effective before January 1, 1993, violated Section 28, Article II of the Ohio Constitution, which prohibits retroactive laws or laws that impair the obligation of contract. The Tax Commissioner rejected that contention, finding that no repair transactions prior to January 1, 1993, were assessed and, therefore, there was no retroactive application of the tax. The Tax Commissioner further found that the imposition of the tax on the repairs did not alter GM's obligations under the warranties.

{¶ 8} On appeal to the Board of Tax Appeals, the final determinations of the Tax Commissioner were affirmed.

{¶ 9} This cause is before the court upon an appeal as of right.

{¶ 10} GM initially contends that the motor vehicles that were repaired by its dealers were not personal property as defined in R.C. 5701.03(A), and, thus,

repair of those vehicles was not subject to use tax. GM raises this issue because R.C. 5739.01(B)(3)(a) provides for a sales tax on repairs to personal property:

{¶ 11} "(B) 'Sale' and 'selling' include all of the following transactions for a consideration * * *;

{¶ 12} "* * *

{¶ 13} "(3) All transactions by which:

{¶ 14} "(a) An item of tangible personal property is or is to be repaired * * *."

{¶ 15} Although R.C. 5739.01(B)(3)(a) is a sales-tax provision and GM was assessed a use tax, we will refer to sales-tax provisions in this opinion, unless otherwise noted, because R.C. 5741.02(C)(2), a use-tax provision, provides:

{¶ 16} "(C) The [use] tax does not apply to the storage, use, or consumption in this state of the following described tangible personal property or services, nor to the storage, use, or consumption or benefit in this state of tangible personal property or services purchased under the following described circumstances:

{¶ 17} "* * *

{¶ 18} "(2) * * * tangible personal property or services, the acquisition of which, if made in Ohio, would be a sale not subject to the tax imposed by sections 5739.01 to 5739.31 of the Revised Code [i.e., sales-tax provisions]."

{¶ 19} Thus, if the item being repaired is not personal property, its repair would not be subject to the sales tax imposed by R.C. 5739.01(B)(3)(a) and, likewise, would not be subject to the use tax.

{¶ 20} GM's contention that the motor vehicles repaired by its dealers were not personal property is based on its interpretation of R.C. 5701.03(A), which provides:

{¶ 21} "As used in Title LVII of the Revised Code:

{¶ 22} "(A) 'Personal property' includes every tangible thing that is the subject of ownership, whether animate or inanimate * * *. * * * 'Personal property' does not include * * * motor vehicles registered by the owner thereof * * *."

{¶ 23} GM contends that since the motor vehicles being repaired are registered by the owners, they are not personal property and, therefore, repair of those vehicles is not the repair of tangible personal property and not subject to the sales or use tax.

{¶ 24} Contrary to GM's position, the Tax Commissioner contends that the exclusion for motor vehicles registered to their owners is applicable only to ad valorem taxes and is not applicable to sales and use taxes. As authority for his contention that R.C. 5701.03 is applicable only to ad valorem taxes, the Tax Commissioner cites *Gen. Motors Corp. v. Lindley* (1981), 67 Ohio St.2d 331, 21 O.O.3d 208, 423 N.E.2d 479, wherein GM had applied for a refund of use taxes it

had paid on patterns purchased from out-of-state suppliers. The opinion states, "The sole issue presented in this cause is whether the patterns in question are exempt from taxation by virtue of the provisions of R.C. 5701.03." Id. at 332, 21 O.O.3d 208, 423 N.E.2d 479. GM argued that the patterns were exempt from use tax because they were not personal property. The basis for GM's argument was that R.C. 5701.03 excluded from the definition of personal property, patterns that "are held for use and not for sale in the ordinary course of business." However, the Tax Commissioner contended that the exclusion of patterns from the definition in R.C. 5701.03 pertained only to ad valorem taxes.

{¶ 25} We determined that GM's use of the patterns was subject to use tax because it is a tax on transactions involving the patterns, not on the patterns themselves, and if the patterns had been purchased from Ohio venders, GM would have had to pay sales tax. Id. at 333–334, 21 O.O.3d 208, 423 N.E.2d 479. While R.C. 5701.03 was raised as an issue in that case, the decision did not reach the issue of whether R.C. 5701.03 should be applied to exclude property from sales and use taxes. Thus, contrary to the Tax Commissioner's assertion, our decision in *Gen. Motors Corp. v. Lindley* did not resolve the issue raised by GM in this case.

{¶ 26} Although at first blush R.C. 5701.03 gives credence to GM's position that motor vehicles registered to their owners are not personal property, further consideration shows that acceptance of that position leads to irreconcilable conflicts with numerous provisions in R.C. Chapter 5739 (the sales-tax chapter). For instance, R.C. 5739.01(E)(2) and R.C. 5739.01(P) exclude from sales tax the sale of a motor vehicle that the consumer will use directly in rendering a public utility service. This presupposes that motor vehicles are personal property for sales-tax and use-tax purposes.

{¶ 27} In addition, R.C. 5739.011(C)(9) provides that a motor vehicle "registered for operation on public highways" is not a "thing transferred" for the purposes of the manufacturing exception; as a result, motor vehicles are not excepted from sales tax under the manufacturing exception in R.C. 5739.01(E)(9). If under R.C. 5701.03(A) registered motor vehicles were not personal property for sales-tax purposes, there would be no reason to exclude them from the manufacturing exception.

{¶ 28} R.C. 5739.01(L) defines "casual sale" as a sale of tangible personal property that the seller had previously obtained for his or her own use. R.C. 5739.02(B)(8) exempts casual sales from sales tax. However, it expressly excludes sales of motor vehicles. In order to constitute a casual sale, the item must be personal property. Because a motor vehicle obtained by a person for his or her own use must be registered, the express exclusion of motor vehicles shows

that the General Assembly considers motor vehicles, including those registered by the owner, to be personal property for sales-tax and use-tax purposes.

{¶ 29} R.C. 5739.02(B)(9) exempts from sales and use taxes "[s]ales of services or tangible personal property, other than motor vehicles, * * * by churches" or nonprofit organizations. Again, motor vehicles are assumed to be personal property for sales-tax and use-tax purposes.

{¶ 30} R.C. 5739.02(B)(23) provides a sales-tax and use-tax exemption for sales of motor vehicles to nonresidents under certain circumstances.

{¶ 31} Perhaps the most telling provision expressing the General Assembly's intent to include registered motor vehicles as personal property is R.C. 5739.01(B)(6), which lists examples of assets as "boats, planes, motor vehicles, or other tangible personal property."

{¶ 32} A review of the legislative history of R.C. 5701.03(A) reveals no indication that the General Assembly intended to exclude registered motor vehicles from personal property for purposes of sales or use taxes. Since at least the Act of March 2, 1846, 44 Ohio Laws 85, there has been a legislative definition of "personal property." The 1846 version states in its preamble that the purpose of the act was "levying taxes on all property in this State according to its true value." Section 1 of that Act provides, "[A]ll property, whether real or personal, within this state * * * except such as is hereinafter expressly exempted, shall be subject to taxation; and such property * * * shall be entered on the lists of taxable property, for that purpose, in the manner prescribed by this act." Section 2 of the Act states as follows:

{¶ 33} "The term 'personal property,' wherever used in this act, shall be held to mean and include-

{¶ 34} "1st. Every tangible thing, being the subject of ownership, whether animate or inanimate, other than money, and not forming part of any parcel of real property, as hereinbefore defined." Thus, the predecessor of R.C. 5701.03 was enacted to define "personal property" for the purpose of ad valorem taxation.

{¶ 35} In 1931, Am.S.B. No. 323, 114 Ohio Laws 714, 716, amended the predecessor of R.C. 5701.03 to exclude from the definition of "personal property," "motor vehicles registered by the owner thereof."

{¶ 36} Apparently to clarify that registered motor vehicles were excluded from the ad valorem tax, the language in what is now R.C. 4503.04 for registering motor vehicles was enacted, providing, "Taxes at the rates provided for in this section shall be in lieu of all taxes on or with respect to the ownership of such motor vehicles." Am.S.B. No. 328, 114 Ohio Laws 851, 852.

{¶ 37} When analyzing the interplay between R.C. 5701.03 and the sales-tax and use-tax laws, it is important to keep in mind that when the definition of

"personal property" was enacted in 1859, and even for a time after the exclusion for "motor vehicles registered by the owner thereof" was added, Ohio had no sales or use taxes. The Ohio sales tax was not enacted until 1934, H.B. No. 134, 115 Ohio Laws, Part II, 306, and the use tax in 1935, H.B. No. 590, 116 Ohio Laws, Part II, 101.

{¶ 38} There can be no question but that since the inception of the sales and use taxes, the General Assembly has considered motor vehicles to be personal property subject to those taxes. For instance, G.C. 6294, H.B. No. 255, 116 Ohio Laws, Part I, 78, 79, enacted in 1935, provided that for a motor vehicle purchased after January 27, 1935, to be registered, the application had to show payment of the three percent sales tax or the reason for its exemption. Casual sales of motor vehicles were initially not subject to sales tax. However, in 1951, the sales-tax exemption for casual sales was amended to specifically exclude the "casual and isolated sales of motor vehicles." Am.S.B. No. 111, 124 Ohio Laws 147, 149. Thus, unless otherwise excepted or exempted, all sales or uses of motor vehicles are subject to sales or use tax, as items of personal property.

{¶ 39} There is clearly a conflict between R.C. 5701.03(A), which excludes motor vehicles registered by their owners from the definition of personal property and the sales-tax and use-tax statutes, which assume that the sale or use of such motor vehicles is the sale or use of personal property. Since their adoption, the sales-tax and use-tax statutes have apparently been operating independently from R.C. 5701.03. Now, however, the provisions have met head-on. When this type of conflict is encountered, we look to R.C. 1.51 for guidance. R.C. 1.51 provides:

{¶ 40} "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail."

{¶ 41} R.C. 5701.03(A) and the sales-tax and use-tax statutes in R.C. Chapters 5739 and 5741 cannot be reconciled to give effect to all.

{¶ 42} Here, the exclusion of motor vehicles registered by their owners from the definition of "personal property" is a general provision, while R.C. Chapters 5739 and 5741 are special provisions, providing for taxing the sale or use of motor vehicles as the sale or use of tangible personal property. R.C. Chapters 5739 and 5741 were adopted after R.C. 5701.03(A). There is no manifest intent that R.C. 5701.03(A) should prevail over R.C. Chapters 5739 and 5741.

{¶ 43} Applying R.C. 1.51, we find that the sales-tax and use-tax provisions in R.C. Chapters 5739 and 5741 prevail as exceptions to the general definition of personal property in R.C. 5701.03(A). Therefore, we find that for purposes of

R.C. Chapters 5739 and 5741, motor vehicles registered by their owners are personal property.

{¶ 44} GM next contends that it did not use the repair parts or realize the benefit of the repair services. We will discuss the repair parts and the repair services issues separately.

{¶ 45} R.C. 5741.02(A) levies use tax on the following:

{¶ 46} "(A) * * * [T]he storage, use, or other consumption in this state of tangible personal property or the benefit realized in this state of any service provided."

{¶ 47} R.C. 5741.02(B) provides that the use tax is imposed on the following:

{¶ 48} "(B) Each consumer, storing, using, or otherwise consuming in this state tangible personal property or realizing in this state the benefit of any service provided, shall be liable for the tax * * *."

{¶ 49} The term "use" is defined in R.C. 5741.01(C) as "the exercise of any right or power incidental to the ownership of the thing used."

{¶ 50} GM contends that it did not use the repair parts, because it never owned or possessed them. However, the Tax Commissioner contends that GM used the repair parts to fulfill its warranty obligations and for its repair programs and, therefore, exercised a right or power incidental to ownership.

{¶ 51} As authority for his position, the Tax Commissioner cites *Drackett Products Co. v. Limbach* (1988), 38 Ohio St.3d 204, 527 N.E.2d 860, wherein Drackett paid out-of-state publishing companies to produce advertising supplements. The publishers shipped the advertising supplements to Ohio newspaper companies that Drackett had selected. The newspaper companies would then insert them into their newspapers and deliver them. Drackett was assessed a use tax based on the amounts it had paid the publishing companies.

{¶ 52} Just as GM does here, Drackett argued that it had never possessed the materials for which it was assessed a use tax. However, we held that "[t]he use tax, contrary to [Drackett's] argument, is not imposed upon the transfer of possession of tangible personal property. It is imposed upon the storage, use, or consumption of tangible personal property in Ohio." Id. at 205, 527 N.E.2d 860. Therefore, because the advertising supplements had been published and distributed in Ohio at Drackett's direction and expense, we found that Drackett had "exercised sufficient rights or powers incidental to ownership to subject its purchase of a portion of the supplement to the use tax." Id. at 206, 527 N.E.2d 860. Applying *Drackett,* we find that just as the advertising supplements were paid for by Drackett and distributed by the newspapers on Drackett's behalf, the repair parts were paid for by GM and were placed on the customers' vehicles on

GM's behalf. Thus, GM exercised sufficient rights or powers incidental to ownership to subject it to the use tax for using the parts.

{¶ 53} GM also contends that it did not realize any benefit from the repair services. In addition to the use tax on the storage, use, or other consumption of tangible personal property, R.C. 5741.02(A) also levies a use tax on "the benefit realized in this state of any service provided." The term "providing a service" is defined in R.C. 5741.01(M) as having "the same meaning as in division (X) of section 5739.01 of the Revised Code," which defines the term as meaning "providing or furnishing anything described in division (B)(3) of [R.C. 5739.01] for consideration."

{¶ 54} R.C. 5739.01(B) provides:

{¶ 55} "(B) 'Sale' and 'selling' include all of the following transactions * * *:

{¶ 56} "* * *

{¶ 57} "(3) All transactions by which:

{¶ 58} "(a) An item of tangible personal property is or is to be repaired * * *."

{¶ 59} Thus, the use tax is imposed upon the benefit of a transaction in which an item of tangible personal property is repaired. Referring to its first proposition of law—that motor vehicles registered by their owners are not personal property—GM contends that it was not the beneficiary of the repair service, because no item of personal property was repaired. We reject this contention because we have determined that motor vehicles registered to their owners are personal property for sales-tax and use-tax purposes.

{¶ 60} In addition, GM contends that it did not receive any benefit from the repair services. We also reject this contention. There are two different transactions occurring when a vehicle is repaired. In one transaction, between GM and its customer, GM is fulfilling its obligations to its customer under the warranty or repair program. In order for GM to fulfill its obligations, it has entered into a separate transaction with the dealer. In this other transaction, which is between GM and its dealer, the dealer provides the parts and services necessary for GM to fulfill its obligations to its customer. The dealer has no warranty or repair-program obligation to GM's customer. When the dealer provides the parts and services to repair a vehicle, GM receives a benefit because the parts and services enable GM to fulfill its warranty or repair-program obligation to its customer. Thus, GM did realize a benefit from the repair services provided by its dealer and that benefit is subject to use tax.

{¶ 61} In its third proposition of law, GM contends that it was not the consumer of any tangible personal property or services provided by the dealers. R.C. 5741.02(B) provides, "Each consumer, storing, using, or otherwise consuming in this state tangible personal property or realizing in this state the benefit of

any service provided, shall be liable for the tax * * *." Thus, it is the consumer that is liable for the use tax. However, GM contends that it was not the consumer and, therefore, it should not be liable for the tax.

{¶ 62} The term "consumer" is defined in R.C. 5741.01(F) as follows:

{¶ 63} "[A]ny person who has purchased tangible personal property or has been provided a service for storage, use, or other consumption or benefit in this state. 'Consumer' does not include a person who receives, without charge, tangible personal property or a service."

{¶ 64} GM contends that the motor vehicle owner is the consumer because he or she paid for the repairs when they paid for the warranty or repair programs as part of the purchase price of the motor vehicle. At this point it bears repeating that two transactions occurred each time a vehicle was repaired. One transaction was between GM and the motor vehicle owner and the other was between GM and its dealer who provided the parts and services. The transaction at issue here is the one between GM and the dealer. It was GM, not the motor vehicle owner, that paid the dealers for the parts and services. GM also received the benefit of the services provided by the dealers because the services were necessary for GM to fulfill its obligations to its customers. The benefit that the motor vehicle owners received was the benefit of GM's warranty or repair programs.

{¶ 65} Applying the definition of "consumer" set forth in R.C. 5741.01(F) makes it clear that the motor vehicle owners were not consumers in these transactions, because they received the parts and services without any charge. Contrary to its argument, GM was a consumer when it purchased and consumed the parts and services that were used to fulfill its warranty and repair programs.

{¶ 66} In its fourth proposition of law, GM contends that with regard to repairs that occurred before July 1, 1993, even if GM had realized a benefit when the dealers performed the repairs covered by the warranty or repair programs, the benefit was resold by GM to the owners of the vehicles and, therefore, under R.C. 5739.01(E)(1), GM was exempt from tax because its purpose was to resell the benefit. July 1, 1993, was the effective date of an amendment to R.C. 5739.01(D) that provided that services purchased in the performance of a warranty contract were not covered by the purchase-for-resale exception. Am.Sub. H.B. No. 152, 145 Ohio Laws, Part II, 3313, Part III, 4289–4290.

{¶ 67} The BTA held that it lacked jurisdiction to consider GM's purchase-for-resale claim because GM did not raise that issue in the notice of appeal filed with the BTA.

{¶ 68} R.C. 5717.02 provides that appeals to the BTA "shall be taken by the filing of a notice of appeal with the board * * * and shall also *specify the errors*

*therein* [in the Tax Commissioner's final determination] *complained of* * * *." (Emphasis added.) This court reviewed the requirements for perfecting an appeal to the BTA in *Am. Restaurant & Lunch Co. v. Glander* (1946), 147 Ohio St. 147, 149–150, 34 O.O. 8, 70 N.E.2d 93, and held, "These requirements are specific and in terms that are mandatory."

{¶ 69} The petitions for reassessment that GM filed with the Tax Commissioner specified that GM should not be taxed, because the repair parts and services "were acquired by General Motors for 'resale' to the vehicle owners." However, when GM filed its notices of appeal with the BTA, it dropped the purchase-for-resale claim; instead it claimed as follows:

{¶ 70} "4. The Commissioner failed to find that the consideration or price paid by the owner of a new motor vehicle at the time of purchase included an amount for repairs to the vehicle that would be provided under a new motor vehicle warranty. Consequently, GM has been assessed use tax on a transaction that was previously subjected to sales tax when the vehicle was purchased by the owner."

{¶ 71} In *Queen City Valves v. Peck* (1954), 161 Ohio St. 579, 583, 53 O.O. 430, 120 N.E.2d 310, this court stated:

{¶ 72} "Under the wording of the statute the [BTA] was entitled to be advised specifically of the various errors charged to the Tax Commissioner. The statute requires in plain language that the errors complained of be specified. The word 'specify,' according to Black's Law Dictionary (4 Ed.) means 'to mention specifically; to state in full and explicit terms; to point out; to tell or state precisely or in detail; to particularize; or to distinguish by words one thing from another.' * * * And in Webster's New International Dictionary (2 Ed.), 'specify' is defined as 'to mention or name in a specific or explicit manner; to tell or state precisely or in detail.' "

{¶ 73} The notices of appeal that GM filed with the BTA did not specify the purchase-for-resale exception or any statutory provision that encompasses the purchase-for-resale exception. GM claims that language in its notices of appeal to the BTA related back to its petitions for reassessment and a technical-arguments memorandum it had filed with the Tax Commissioner. In its brief filed with this court, GM claims that its "purchase for resale claim is inherent in its double taxation claim." However, a claim of double taxation is different from a claim of exception from taxation as a purchase for resale.

{¶ 74} The BTA is not required to decipher a notice of appeal. While this court has stated that it is "not disposed to deny review by a hypertechnical reading of the notice," *MCI Telecommunications Corp. v. Limbach* (1994), 68 Ohio St.3d 195, 197, 625 N.E.2d 597, the notice is required to "specify" the errors complained of, which means that they are to be clearly and distinctly set forth.

The purchase-for-resale claim was not clearly and distinctly set forth in the notices of appeal that GM filed with the BTA.

{¶ 75} GM cites *Goodyear Tire & Rubber Co. v. Limbach* (1991), 61 Ohio St.3d 381, 575 N.E.2d 146, to support its contention that it specified a claim of purchase for resale in its notices of appeal. In *Goodyear*, the question arose whether the taxpayer had raised an issue in its notice of appeal to the BTA. The court concluded that the taxpayer could assert an alternative argument in this court in support of an issue it had raised in the BTA. The court permitted that alternative argument because it concluded that Goodyear had specified the commissioner's action that it questioned, cited the statute under which it objected, and asserted the treatment that it believed the commissioner should have applied. Id. at 383, 575 N.E.2d 146.

{¶ 76} Conversely, in GM's notices of appeal to the BTA, it did not question the Tax Commissioner's finding that the purchase-for-resale exception was not applicable, nor did it cite the statutory provision relating to the purchase-for-resale exception. Therefore, the notices did not meet the specificity required by R.C. 5717.02. Since GM's notices of appeal did not specify the purchase-for-resale issue, the BTA had no jurisdiction to determine it. Consequently, this court has no jurisdiction to review the purchase-for-resale issue raised by GM. *Osborne Bros. Welding Supply, Inc. v. Limbach* (1988), 40 Ohio St.3d 175, 178, 532 N.E.2d 739.

{¶ 77} In its final proposition of law, GM contends that by taxing its use of parts and services the state impaired GM's obligation of contracts in violation of Section 28, Article II of the Ohio Constitution, which provides, "The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts * * *."

{¶ 78} In support of its contention that its contracts were impaired, GM claims that its bargained-for profit on the sale of its vehicles has been reduced. GM claims that because it anticipated a certain amount it would have to pay per vehicle for repairs, any unanticipated tax it is required to pay reduces its profit. However, anytime the state raises the rate of any tax paid by GM, the amount of profit realized is reduced. Surely, GM does not believe that by entering a contract it is constitutionally guaranteed a lock on the current tax rate. We find that the tax did not impair GM's contractual obligations.

{¶ 79} In *North Missouri RR. Co. v. Maguire* (1873), 87 U.S. (20 Wall.) 46, 22 L.Ed. 287, the court had before it the question whether it was a violation of the United States Constitution provision prohibiting the states from passing laws that impair the obligation of contracts for the state of Missouri to impose a tax on proceeds from the operation of a railroad after the state had entered into a

contract with the railroad that provided how the railroad's gross earnings would be distributed. In upholding the power of the state to tax, the court stated:

{¶ 80} "Unless exempted in terms which amount to a contract not to tax, the property, privileges, and franchises of a corporation are as much the legitimate subjects of taxation as any other property of the citizens which is within the sovereign power of the State. Repeated decisions of this court have held, in respect to such corporations, that the taxing power of the State is never presumed to be relinquished, and consequently that it exists unless the intention to relinquish it is declared in clear and unambiguous terms." Id. at 61, 22 L.Ed. 287.

{¶ 81} GM had no contract with the state forbidding taxation; the state properly exercised its constitutional right to tax.

{¶ 82} For all of the foregoing reasons, we hold that the decision of the BTA was reasonable and lawful, and we affirm it.

Decision affirmed.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Jones Day and Charles M. Steines, for appellant.

Jim Petro, Attorney General, and Richard C. Farrin, Assistant Attorney General, for appellee.