DAIMLERCHRYSLER CORPORATION, APPELLANT,
*v.* LEVIN, TAX COMMR., APPELLEE.

[Cite as *DaimlerChrysler Corp. v. Levin,*
117 Ohio St.3d 46, 2008-Ohio-259.]

(No. 2006–1731—Submitted October 16, 2007—Decided January 30, 2008.)

O'CONNOR, J.

{¶ 1} In this appeal, DaimlerChrysler Corporation ("DCC"), a car manufacturer, asks the court to reverse a decision by the Board of Tax Appeals ("BTA") that affirmed two use-tax assessments that had been affirmed by the Tax Commissioner. The assessments require DCC to pay use taxes with respect to repair parts and repair services that DCC paid for under its "goodwill repair" program. DCC had no contractual obligation to pay for the repairs at issue, but did so in order to retain and foster goodwill with its car buyers.

{¶ 2} DCC advances several arguments why the BTA's decision should be reversed. We find that under the use-tax law, DCC was not the consumer of the parts and services at issue. Instead, the car buyers, who actually enjoyed the benefit of the services and took possession of the parts, were the consumers of both. Because DCC was not the consumer, it did not incur a use-tax obligation when it paid for the repairs, and thus the assessments are unlawful. Since this finding disposes of the entire case, we find it unnecessary to address DCC's other arguments.

## Relevant Background

{¶ 3} Before us are two use-tax assessments, the first pertaining to the audit period October 1, 1994, through December 31, 1997, and the second pertaining to the January 1, 1998, through December 31, 2000 audit period. During these audit periods, DCC possessed a direct-pay permit, which permitted it to pay sales and use taxes on purchases directly to the state, rather than to its vendors.

{¶ 4} Both assessments are for "goodwill repairs," which are repairs performed by dealers on DaimlerChrysler vehicles after the warranty period has expired.

The repairs were performed at no additional cost to the customer, and DCC reimbursed the dealer for all costs incurred. The assessments encompass both parts and labor, because both types of transaction would normally be retail sales that are taxable on any vehicles repaired in Ohio. Namely, sales of auto parts constitute taxable transactions of tangible personal property. R.C. 5739.01(B)(1). Sales of repair services and installation services constitute taxable transactions pursuant to R.C. 5739.01(B)(3)(a) and (b). See also R.C. 5741.02(A)(1) and (C)(2) (limiting use tax to transactions that would involve taxable sales if the sales were made in Ohio).

{¶ 5} Although DCC reimbursed the dealers for goodwill repairs, it did so as part of its profit-making enterprise. In setting the vehicle prices, DCC considered two general types of information: variable costs relating to Chrysler brands and the pricing of competitive products. The goal was to establish a price that would both yield an appropriate profit margin and be a competitive market price. The record shows that DCC builds the anticipated cost of goodwill repairs into the price of its vehicles. When customers purchased DCC's vehicles from the dealers, the dealer collected sales tax on the sale price of the car. Thus, the customers not only paid for the anticipated costs of goodwill repairs, they also paid sales tax on that amount.

{¶ 6} The agreements between DCC and its dealers obligate the dealers to service the cars they sell and to comply with the warranty policy and procedure set by the manufacturer. These agreements also specify that the dealers act as independent contractors in performing repairs, not as agents of DCC. Customers typically had the option of selecting either a three–year/36,000–mile basic warranty or a 12–month/12,000–mile basic warranty with a seven–year/70,000–mile power-train warranty.

{¶ 7} As mentioned earlier, repairs made after the vehicle's limited warranty had expired might be paid for by DCC under its goodwill-repair policy. Under DCC's dealer self-authorization program, dealers were permitted to authorize goodwill repairs. DCC's written guidelines regarding the self-authorization program encourage dealers not to simply offer to pay for the entire repair, but instead to work with customers to arrive at a reasonable amount for the customer to pay toward any repairs made outside the warranty period. DCC's guidelines impose caps on how much DCC will pay under its goodwill-repair policy.

## Analysis

{¶ 8} R.C. 5741.01(F) defines "consumer" for use-tax purposes as a "person who has purchased tangible personal property or has been provided a service for storage, use, or other consumption or benefit in this state." "Purchase," as defined in R.C. 5741.01(D), means "acquired or received for a consideration, whether such acquisition or receipt was effected by a transfer of title, or of

possession, or of both * * *." At the outset, we note that under these definitions, the car owner, not DCC, appears to be the consumer of the goods and services at issue herein, because he or she receives both title to and possession of repair parts supplied under DCC's goodwill-repair program. Likewise, the car owner is "provided" a repair service for his or her "benefit."

{¶ 9} The Tax Commissioner relies heavily on *Gen. Motors Corp. v. Wilkins*, 102 Ohio St.3d 33, 2004-Ohio-1869, 806 N.E.2d 517, a case in which we held that General Motors Corporation ("GM") was the "consumer" when it paid for repair parts and services under its warranty or repair programs. Id. at ¶ 64, 65. But in spite of our reference in *Gen. Motors* to "repair programs" apart from warranty obligations, our analysis in *Gen. Motors* focused on warranty repairs. We held that GM "received the benefit of the services provided by the dealers because the services were necessary for' GM to fulfill its obligations to its customers." Id., ¶ 64. We applied the definition of "consumer" and concluded that "the motor vehicle owners were not consumers in these transactions, because they received the parts and services without any charge." Id. at ¶ 65. By contrast, "GM was a consumer when it purchased and consumed the parts and services that were used to fulfill its warranty and repair programs." Id.

{¶ 10} We conclude that in *Gen. Motors*, the manufacturer's contractual obligation under its warranty agreements was the decisive factor in determining that the manufacturer was the consumer of parts and services. Quite simply, Ohio's sales- and use-tax law treats warranties as an intangible right that is purchased separately from the vehicle. As a result, the warranty contract is taxed separately. See R.C. 5739.01(B)(7) (taxable sales include "transactions in which a warranty, maintenance or service contract, or similar agreement by which the vendor of the warranty, contract, or agreement agrees to repair or maintain the tangible personal property of the consumer").

{¶ 11} When a manufacturer becomes the obligor on a warranty relating to the products its dealers sell to customers, the logic of the sales- and use-tax law makes it the consumer of the repair parts and service it pays for in order to fulfill its obligations under the warranty. That is so because the car buyer paid for the warranty, which gave her the contractual right *not to be charged* for those parts and services. Thus, as we stated in *Gen. Motors*, the vehicle owners received parts and services without charge, because they had previously been charged for the entitlement to receive exactly that. Id., 102 Ohio St.3d 33, 2004-Ohio-1869, 806 N.E.2d 517, ¶ 64–65.

{¶ 12} By contrast, the goodwill repairs in this case do not relate to any charge or consideration that is separable from the price of the cars that were purchased. That is so because the buyers acquired no contractual right to have DCC pay for repairs needed after the warranty expires. As a result, it is fair to view the

portion of the price of the car that covers the cost of goodwill repairs as a "charge" for those repairs under R.C. 5741.01(F). Thus, goodwill repairs involve parts and services for which the manufacturer pays, but they are not received by the car owners "without charge," because the portion of the sale price related to the anticipated cost of such items constitutes a charge to the car owner. Because the car owners paid a charge that relates to the cost of goodwill repairs, they can properly be viewed as the "consumers" in that transaction.

{¶ 13} We recognize that our analysis in this case applies only in very limited situations. In the typical case, the person who orders and pays for an item or a service will be the "consumer" of that item or service, even if the item or service is purchased with a view to benefiting another. For example, if a parent orders and pays for a laptop computer to be delivered to her child at college, the parent will be the consumer for tax purposes, even though it is the child who actually derives the benefit of the computer. In that case, of course, the computer was provided to the child "without charge."

{¶ 14} A situation more directly on point is when a seller of a product accommodates a dissatisfied purchaser by paying to replace a defective part. In most cases, that seller is the "consumer" when it orders the replacement from a third-party supplier, pays for it, and has it shipped to the dissatisfied purchaser. That is so even if the seller charged a little more for the product to cover situations in which it would pay for defective components.

{¶ 15} But the present situation is different. Quite simply, the selling and maintaining of automobiles is a unique business, as the evidence before the BTA well documents. Car dealers are often locked into contracts with car manufacturers, under which the dealers must service the vehicles they sell in accordance with the contract specifications.

{¶ 16} In each instance, when a repair is needed, the owner presents the car at the dealership and demands service. The dealer then performs the repairs, billing either the car owner or the manufacturer. In many instances, the dealer will "self-authorize," i.e., determine without consulting the manufacturer whether the repair qualifies as a goodwill repair. If the owner is billed, the owner is clearly the consumer of the parts and services. Under *Gen. Motors,* the manufacturer is the consumer of the parts and services when it pays for warranty repairs.

{¶ 17} As for goodwill repairs, we hold that the owner is the consumer. That result is justified because of the presence of the three elements we have already discussed. First, the manufacturer increased the price it charged for the vehicles to cover the cost of such repairs. Second, the increase in price is actually a charge for the goodwill repairs themselves, instead of a charge for a contractual obligation on the part of the manufacturer to pay for such repairs. Third, the

transactions at issue occur in the context of an ongoing contractual relationship between the dealer and the manufacturer, under which the dealer is obligated to provide repairs and determine whom to bill for such repairs.

{¶ 18} The fact that all three of these elements are present distinguishes the present case from those in which a business distributes free items to promote its products. See *Am. Cyanamid Co. v. Tracy* (1996), 74 Ohio St.3d 468, 659 N.E.2d 1263 (pharmaceutical manufacturer owed use tax on free samples of prescription drugs it gave to Ohio doctors); *Internatl. Thomson Publishing, Inc. v. Tracy* (1997), 79 Ohio St.3d 415, 683 N.E.2d 1091 (textbook reseller owed use tax on copies of textbooks furnished without charge to teachers); *Drackett Prods. Co. v. Limbach* (1988), 38 Ohio St.3d 204, 527 N.E.2d 860 (retailer owed use tax on newspaper advertising supplements for which it had selected (1) the content, (2) the papers in which to place the supplement, and (3) the date on which to deliver the supplement). In those cases, the recipients of the free items do not pay a charge and are therefore not the consumers of the items under the use-tax definition of "consumer." Nor would they be the consumers if the business promoting its products by giving the free items built the cost of the free items into the price of its products. For example, if a publisher of textbooks provides a free sample of the new edition of the textbook to a person who previously purchased the prior edition, the recipient has not been "charged" for the sample, even if the cost of distributing samples was built into the price of the textbooks the recipient previously purchased. That is so because distributing the sample does not closely relate to the sale of the earlier edition. By contrast, the repair of a specific car very closely relates to the earlier purchase of that very car.

{¶ 19} The Tax Commissioner asserts that the repairs at issue in this case should be compared to the "special-policy repairs" at issue in *Gen. Motors*, 102 Ohio St.3d 33, 2004-Ohio-1869, 806 N.E.2d 517. In *Gen. Motors*, the manufacturer paid for certain repairs that resulted from defects in materials or workmanship. Those repairs were called "special-policy repairs." *Gen. Motors Corp. v. Tracy* (Oct. 4, 2002), BTA Nos. 97–T–168 and 97–T–169, at 4. The BTA found that GM had calculated its sale price to cover the cost of special-policy repairs. Id. at 6. However, although GM would pay for a special-policy repair even if the warranty had expired, the BTA found that GM treated a repair as a "special policy adjustment" even if the warranty was still in effect. Id. at 4.

{¶ 20} This last finding is significant in determining the precedential effect of *Gen. Motors* on the outcome of this case. Namely, our opinion in *Gen. Motors* did not identify any special-policy repairs that were not also covered by the warranty. Nor did we devote any separate analysis to the issue whether GM would qualify as the consumer with respect to special-policy repairs if those repairs were not also covered by the warranty. Accordingly, *Gen. Motors* is not

controlling in determining who is the consumer of the goodwill repairs in this case, because the goodwill repairs were, by definition, not covered by the warranty.

{¶ 21} Finally, we find that our conclusion is supported in a general way by the Michigan Supreme Court's decision in *Gen. Motors Corp. v. Dept. of Treasury, Revenue Div.* (2002), 466 Mich. 231, 644 N.W.2d 734. To be sure, Michigan law differs from Ohio law in that it considers the car buyers' payment of sales tax as precluding imposition of use tax on warranty repairs as well as on goodwill repairs, id. at 232, 644 N.W.2d 734, whereas our *Gen. Motors* decision, 102 Ohio St.3d 33, 2004–Ohio–1869, 806 N.E.2d 517, holds that the manufacturer is liable for use tax on warranty repairs (unless such repairs are otherwise exempted in whole or in part, see R.C. 5739.02(B)(42)(k)). Quite simply, Michigan regards both warranty repairs and goodwill repairs as part of the consideration that is furnished to car owners at the time they purchase the car. As a result, in Michigan, the sales tax paid on the car purchase constitutes payment of tax for replacement parts, and no use tax can be imposed when those parts are later provided. By contrast, the theory that the goodwill-repair program constituted consideration that was furnished to the car buyers is foreclosed in Ohio by *Coca–Cola Bottling Corp. v. Kosydar* (1975), 43 Ohio St.2d 186, 193–194, 72 O.O.2d 104, 331 N.E.2d 440 (lack of legal obligation to furnish dispensing equipment meant that furnishing the equipment was not consideration).

{¶ 22} Nonetheless, the Michigan court's central concern parallels our own. Specifically, car buyers paid enough to cover goodwill repairs, without obtaining a contractual right to such repairs, and they also paid sales tax on the amount they paid for goodwill repairs. We do not believe that the legislature intended to dissuade the manufacturer from spending the money it has collected to fund those repairs, by imposing a second layer of taxation.

{¶ 23} As previously stated, our determination that the car owners, not DCC, are the consumers with respect to goodwill repairs disposes of the entire case before us. Accordingly, we do not reach the other arguments advanced by DCC.

Decision reversed.

PFEIFER, LUNDBERG STRATTON, and O'DONNELL, JJ., concur.

MOYER, C.J., and LANZINGER and CUPP, JJ., dissent.

---

**MOYER, C.J., dissenting.**

{¶ 24} In *Gen. Motors Corp. v. Wilkins*, 102 Ohio St.3d 33, 2004-Ohio-1869, 806 N.E.2d 517, we held that another car manufacturer was the "consumer" for use-tax purposes with respect to warranty and special-policy repairs that it paid on

behalf of car owners. The majority attempts to distinguish *Gen. Motors* from this case by describing *Gen. Motors* as addressing only the situation in which the manufacturer has a contractual obligation to pay for the repairs. I disagree, and I would affirm the Board of Tax Appeals ("BTA") in this case on the basis of *Gen. Motors*.

{¶ 25} First, *Gen. Motors* did not address only warranty repairs; it addressed special-policy repairs as well. The manufacturer in *Gen. Motors* had no more contractual obligation to perform special-policy repairs than DaimlerChrysler Corporation had to perform the goodwill repairs at issue in this case. Therefore, I find that *Gen. Motors* directly dictates that DaimlerChrysler is the consumer in this case.

{¶ 26} Second, the majority attempts to distinguish *Gen. Motors* by finding that the car buyers in this case paid a "charge" to cover the cost of the repairs. Because a warranty gives a customer the right to demand that the manufacturer pay for covered repairs, the amount that car buyers pay for the warranty is consideration for the purchase of the warranty, not consideration for the purchase of the repairs. The majority recognizes this principle, but then erroneously concludes that in this case, where no warranties are at issue, the portion of the sale price that the car buyers pay to cover the cost of goodwill repairs somehow constitutes a charge for those repairs. The logic of *Gen. Motors* dictates the contrary conclusion. Namely, the payment made to purchase a car is consideration *for the purchase of the car*, not for the purchase of repairs performed long after the purchase of the car.

{¶ 27} The mere fact that a manufacturer builds its overhead costs into the price of a car does not mean the car purchaser is purchasing the overhead items. For example, DaimlerChrysler probably built the cost of advertising into the price of its cars; that does not mean that car purchasers are purchasing the advertising when they purchase a car. Nor are car buyers purchasing the machinery and equipment or the labor used to manufacture the car; they are purchasing a car, and nothing else.

{¶ 28} Finally, the majority finds support in the Michigan Supreme Court's decision in *Gen. Motors Corp. v. Dept. of Treasury, Revenue Div.* (2002), 466 Mich. 231, 644 N.W.2d 734. That case is inapposite for several reasons. Most significant is the fact that, in the Michigan case, the tax administrator had conceded that "parts provided under [a warranty] are not subject to use tax because the customers paid for the right to replacement parts under [the warranty] at the time of the retail sale." Id. at 233–234, 644 N.W.2d 734. By contrast, in Ohio, the Tax Commissioner vigorously contends against the theory that paying for a warranty, or paying for a car, constitutes payment for repairs performed later. We have already held that the manufacturer is liable for use

tax with respect to—at a minimum—warranty repairs. *Gen. Motors.* Thus, the Michigan case simply does not constitute persuasive authority on the issue that we confront in this case.

{¶ 29} For all these reasons, I respectfully dissent and would affirm the BTA.

CUPP, J., concurs in the foregoing opinion.

---

**LANZINGER, J., dissenting.**

{¶ 30} I dissent from the holding that a vehicle owner who receives "goodwill repairs" is a "consumer" for use-tax purposes. I would affirm the Board of Tax Appeals ("BTA") based on *Gen. Motors Corp. v. Wilkins,* 102 Ohio St.3d 33, 2004-Ohio-1869, 806 N.E.2d 517.

{¶ 31} A "consumer" for purposes of use tax is "any person who has purchased tangible personal property or has been provided a service for storage, use, or other consumption or benefit in this state. 'Consumer' *does not include a person who receives, without charge, tangible personal property or a service.*" (Emphasis added.) R.C. 5741.01(F). In this case, the payments for goodwill repairs by DaimlerChrysler Corporation ("DCC") are more than simply payments for repairs performed after the warranty period. They are payments for property and services provided to the owner *without charge,* and are made for the benefit of DCC in that they help retain the customer's loyalty and goodwill.

{¶ 32} In *Gen. Motors,* we affirmed the use-tax assessments upheld by the BTA against General Motors Corporation ("GM") for amounts that GM, the manufacturer, had paid its Ohio dealers for parts and services to repair motor vehicles under the company's warranty *and* special-policy repair programs even though GM claimed, as DCC does here, that it was not the consumer. Without overruling *Gen. Motors,* the majority allows DCC to escape assessment of the use tax by holding that DCC is not the consumer with respect to goodwill repairs.

{¶ 33} The majority artificially limits *Gen. Motors* to apply only to warranty repairs on the faulty basis that GM was the consumer in that case only because it received the benefit of fulfilling a warranty contract. But *Gen. Motors* had a broader application by its own terms. There, we rejected GM's argument that "the motor vehicle owner is the consumer because he or she paid for the repairs when they [sic] paid for *the warranty or repair programs* as part of the purchase price of the motor vehicle." (Emphasis added.) Id., 102 Ohio St.3d 33, 2004-Ohio-1869, 806 N.E.2d 517, ¶ 64. We recognized that the vehicle owner received those repair parts and services without charge, whether by warranty or not, and thus could not be a "consumer" for assessment of use tax. Id. at ¶ 65.

{¶ 34} The important fact to consider is whether the vehicle owner pays for the repairs. The majority acknowledges that DCC does not separately charge for goodwill repairs within a vehicle's overall price. In an illogical leap, however, the majority remarks that "it is fair to view the portion of the price of the car that covers the cost of goodwill repairs as a 'charge' for those repairs under R.C. 5741.01(F)." Majority opinion at ¶ 12. But even if DCC builds the anticipated cost of goodwill repairs into the vehicle price, there is nothing in the record to show that the car owners are made aware by DCC or the car dealers of the possibility that they might receive free parts and services pursuant to the goodwill-repair program.

{¶ 35} Therefore, goodwill repairs, which by definition are made without charge to customers, are made at the company's discretion. Yet DCC receives a benefit for these repairs in the form of its customers' satisfaction. That benefit is similar to, rather than distinct from, GM's benefit of fulfilling contractual obligations through warranty repairs. In other cases in which companies provided items free of charge to enhance the companies' marketing efforts, customer-satisfaction goals, or similar business purposes, we held that the companies were subject to use tax for the items. See, e.g., *Internatl. Thomson Publishing v. Tracy* (1997), 79 Ohio St.3d 415, 683 N.E.2d 1091.

{¶ 36} I conclude that this matter is resolved by *Gen. Motors Corp. v. Wilkins*, 102 Ohio St.3d 33, 2004-Ohio-1869, 806 N.E.2d 517.

{¶ 37} Because DCC is the consumer for purposes of its goodwill-repair program, I dissent and would affirm the BTA's decision.

CUPP, J., concurs in the foregoing opinion.

_____

Jones Day and Charles M. Steines, for appellant.

Marc Dann, Attorney General, and Barton A. Hubbard and Sophia Hussain, Assistant Attorneys General, for appellee.