GOODYEAR TIRE & RUBBER COMPANY, APPELLANT,
*v.* LIMBACH, TAX COMMR., APPELLEE.

[Cite as *Goodyear Tire & Rubber Co. v. Limbach* (1991), 61 Ohio St.3d 381.]

(No. 90–1396—Submitted May 15, 1991—Decided August 14, 1991.)

*Thompson, Hine & Flory, Stephen L. Buescher* and *John A. Biek,* for appellant.

*Lee I. Fisher,* Attorney General, and *James C. Sauer,* for appellee.

*Per Curiam.* First, the Tax Commissioner, in opposition to Goodyear's appeal, argues that Goodyear has not invoked the court's jurisdiction to consider Goodyear's argument that this agreement was not truly a lease. She claims that Goodyear failed to specify this argument in its notice of appeal to the BTA and failed to argue this theory there. Goodyear replies that it raised the apportionment/allocation issue before the BTA, and that it now correctly asserts an alternative argument in support of this specifically raised issue. We agree with Goodyear.

For a reviewing court to have jurisdiction over an alleged error, the taxpayer must assert the error in the notice filed with the BTA. *Osborne Bros. Welding Supply, Inc. v. Limbach* (1988), 40 Ohio St.3d 175, 532 N.E.2d

739. To satisfy the specificity requirement, the taxpayer must specify the actions and findings of the commissioner that the taxpayer contests and articulate the basis for the asserted error. *Abex Corp. v. Kosydar* (1973), 35 Ohio St.2d 13, 64 O.O.2d 8, 298 N.E.2d 584.

Here, Goodyear's tax representative sent a letter to the BTA objecting to the allocation of the net rental loss outside Ohio. He contended that Goodyear should apportion this loss, and he cited R.C. 5733.051(B) and (H) (former 5733.051[A][2] and [A][8]) in support. We conclude that he specified the commissioner's action that Goodyear questioned, cited the statute under which Goodyear objected, and asserted the treatment he believed the commissioner should have applied to the income. Under these circumstances, Goodyear may assert this alternative argument before us.

As to the substantive question, former R.C. 5733.051(A)(2) and (A)(8) stated, for the 1983 tax year:

"(A) Net income of a corporation subject to the tax imposed by this chapter shall be allocated and apportioned to this state as follows:
" * * *

"(2) Net rents and royalties from tangible personal property, to the extent such property is utilized in this state, are allocable to this state, if the taxpayer is otherwise subject to the tax provided by this chapter;
" * * *

"(8) Any other net income, from sources other than those enumerated in subdivisions (1) to (7), inclusive, of this division, shall be allocated to this state on the basis of the apportionment mechanism provided in division (B) of section 5733.05 of the Revised Code."

Thus, the statute allocates net rents from tangible personal property to Ohio to the extent a taxpayer uses the property in Ohio, and it apportions net income from sources other than, *inter alia*, tangible personal property. Goodyear argues that the tax benefits derived from its agreement with American Motors is not net income from tangible personal property but an intangible tax benefit. It should, so it argues, apportion the income under R.C. 5733.051(A)(8) and the three-factor (now four-factor) fraction of R.C. 5733.05(B)(2). The commissioner, to the contrary, maintains that the agreement deemed the parties' relationship to be a lease of personal property and that, consequently, Goodyear should allocate the entire net loss outside Ohio, under R.C. 5733.051(A)(2), because the property was not used in Ohio. Again, we agree with Goodyear.

In *Twentieth Century–Fox Film Corp. v. Lindley* (1982), 2 Ohio St.3d 54, 2 OBR 596, 442 N.E.2d 766, a producer and distributor of motion picture films

apportioned royalties received from licensing agreements with exhibitors of the film. The commissioner, however, allocated these amounts as "net rents and royalties from tangible personal property," resulting in an additional franchise tax. On appeal, the BTA apportioned the agreements, finding that the agreements were actually the transfer of an intangible copyright. We affirmed.

There, we identified the crucial question as, what are the film exhibitors paying for? We concluded that the exhibitors were paying for the right to exhibit publicly the performances captured on films and not for the lease of the celluloid. We used a true-object test to determine the actual substance of the transaction.

As applicable to the instant case, Congress enacted Section 168(f)(8), Title 26, U.S.Code, to jump-start a stagnant economy. This statute created the now-ended safe harbor leasing program. Under this program, a company, already suffering losses and needing cash rather than the liberal ACRS depreciation or the generous investment tax credits, could sell the tax losses to profitable companies that could benefit from the deductions. General Explanation of the Economic Recovery Tax Act of 1981, Staff Report of the Joint Committee on Taxation (Dec. 29, 1981) 102–104; 5 Mertens, Law of Federal Income Taxation (1991) 216–217, Section 23.133; Note, "Safe Harbor" as Tax Reform: Taxpayer Election of Lease Treatment (1982), 95 Harv.L.Rev. 1648. The vehicle for this tax benefits purchase was a deemed sale and leaseback. Temp. Treas. Reg. Section 5c.168(f)(8)–1(c)(2), moreover, disregarded the lessee's ownership of the property for state and local law purposes and ignored the lessee's retention of the burdens, benefits, and incidents of ownership if the agreement met the safe harbor lease requirements.

As Goodyear argues, this agreement is not a lease of tangible personal property. Goodyear did not acquire title to, or possession of, the equipment. It had no right to seize the equipment for default on any payments; Goodyear only owned the tax deductions. This is the sale of intangible tax benefits, and, under *Twentieth Century–Fox*, Goodyear should apportion the deductions.

Since we have decided this matter in Goodyear's favor on the preceding basis, we will not address its alternative arguments. Accordingly, we reverse the BTA's decision because it is unreasonable.

*Decision reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.