CONSUMER DIRECT, INC., APPELLEE, *v.* LIMBACH, TAX COMMR., APPELLANT.

[Cite as *Consumer Direct, Inc. v. Limbach*
(1991), 62 Ohio St.3d 180.]

(No. 90–2484—Submitted September 24, 1991—Decided December 11, 1991.)

*Thompson, Hine & Flory, William R. Stewart, John A. Biek* and *H. Gene Shackle,* for appellee.

*Lee I. Fisher,* Attorney General, and *David G. Lambert,* for appellant.

---

*Per Curiam.* We agree with the commissioner on both issues under appeal and reverse the decision of the BTA.

Former R.C. 5733.051(A)(2) and (8), for the pertinent years, provided:

"Net income of a corporation subject to the tax imposed by this chapter shall be allocated and apportioned to this state as follows:

" * * *

"(2) Net rents and royalties from tangible personal property, to the extent such property is utilized in this state, are allocable to this state, if the taxpayer is otherwise subject to the tax provided by this chapter;

" * * *

"(8) Any other net income, from sources other than those enumerated in subdivisions (1) to (7), inclusive, of this division, shall be allocated to this state on the basis of the apportionment mechanism provided in division (B) of section 5733.05 of the Revised Code." (134 Ohio Laws, Part II, 1564–1565.)

Thus, this statute allocates net rentals from tangible personal property and apportions, according to the three-factor fraction, net rentals from other than, *inter alia,* tangible personal property. *Goodyear Tire & Rubber Co. v. Limbach* (1991), 61 Ohio St.3d 381, 575 N.E.2d 146.

The commissioner argues that the income in the instant case is from the licensing of an intangible asset and apportionable. Consumer Direct responds that the income is net rental income from the temporary transfer of magnetic tapes and allocable outside Ohio.

In *Twentieth Century–Fox Film Corp. v. Lindley* (1982), 2 Ohio St.3d 54, 2 OBR 596, 442 N.E.2d 766, we considered whether income generated from licensing of film prints constituted net rents or royalties from the lease of tangible personal property or income from the use of an intangible. We viewed the crucial question as " * * * what are the film exhibitors paying for in these agreements with appellee?" *Id.* at 55, 2 OBR at 597, 442 N.E.2d at 767. We answered that the exhibitors were paying for the right to exhibit the films publicly, an intangible right protected by copyright. We said, "[t]he positive print given to the exhibitors under their licensing agreements with appellee is of no value, unless that print is accompanied by a right to display the film publicly for profit." *Id.* Thus, we must discern the true object of the disputed transactions.

In protecting trade secrets, R.C. 1333.51(A)(3) defines "trade secret" as:

" * * * [T]he whole or any portion or phase of * * * [the] listing of names, addresses, or telephone numbers, which has not been published or disseminated, or otherwise become a matter of general public knowledge. Such * * * listing of names, addresses, or telephone numbers is presumed to be secret when the owner thereof takes measures designed to prevent it, in the ordinary course of business, from being available to persons other than those selected by the owner to have access thereto for limited purposes."

In *Valco Cincinnati, Inc. v. N & D Machining Serv., Inc.* (1986), 24 Ohio St.3d 41, 45, 24 OBR 83, 86, 492 N.E.2d 814, 817–818, we explained the nature of a trade secret:

" * * * [T]rade secret laws are not those of property but the equitable principles of good faith applicable to confidential relationships. * * *

"Generally, under trade secret statutes, that which is proscribed is the misappropriation of the information obtained from the person holding the trade secret, whether such secret is obtained without the owner's consent, or originally with the owner's consent, and later converted to the use and gain of the one obtaining the secret. * * * "

Furthermore, 1 Milgrim on Trade Secrets (12 Business Organizations) (1991) 1–19, Section 1.02[1], characterizes trade secrets as intangible forms of property, and, at 2–249, Section 2.09[7], observes that customer relations can be the most valuable asset that an enterprise has and information about that relationship, *i.e.*, customer lists, is a matter it might wish to keep from its competitors. At 6–49, Section 6.04, Milgrim states that trade secrets are property and that, for federal tax purposes, are treated substantially the same as other forms of intangible personal property.

According to the above authority, a customer list is an intangible asset. It contains information of value to the owner which the owner may keep secret or control the release of for profit.

Here, the direct-mail vendor seeks the privilege to send direct-mail solicitations to individuals secured as customers by Consumer Direct. The vendor accomplishes this by purchasing the license to use Consumer Direct's customer list. Hence, in answer to the question posed in *Twentieth Century–Fox, supra*, the vendor in this case is seeking the information on the tape and not the tangible tape. Consequently, the fees generated from this transfer are apportionable, as the commissioner argues. Accord *Goodyear Tire & Rubber Co. v. Limbach, supra*.

Next, the commissioner contends that the BTA erred when it prevented her from reviewing the 1980 return to adjust the loss carryover deduction taken in the 1981 return.

Former R.C. 5733.11 (now 5733.11[B]) prohibited the commissioner from assessing " * * * a taxpayer more than three years after the final date as of which such report subject to assessment was required to be filed, provided that there shall be no bar or limit to an assessment against a taxpayer that failed to file the report subject to assessment as required by this chapter." (134 Ohio Laws, Part II, 1569.)

Notably, this statute did not prohibit the commissioner from *reviewing* a tax year closed to assessment, adjusting the calculations contained in the return for that year, and applying those figures to an open year to assess tax for the open year. Moreover, she may use antecedent facts as criteria in the operation of the statute. *Cleveland Gear Co. v. Limbach* (1988), 35 Ohio St.3d 229, 233, 520 N.E.2d 188, 193. Here, the commissioner is not assessing Consumer Direct for a closed tax year; she is adjusting a loss amount carried over by Consumer Direct from a closed year into the open year to assess Consumer Direct for the open year.

Moreover, *McLean Trucking Co. v. Lindley, supra*, 70 Ohio St.2d 106, 24 O.O.3d 187, 435 N.E.2d 414, on which the BTA relied, does not address this question. In *McLean*, the taxpayer neglected to inform the commissioner that the Internal Revenue Service had audited its returns and increased its federal taxable income, which, in turn, increased the taxpayer's Ohio franchise tax liability. When the commissioner learned of this, he assessed tax on the additional income and also assessed tax on income unrelated to the federal changes.

We ruled that R.C. 5733.11 barred reopening of the returns except for the limited purpose of assessing the federal corrections that would have been reflected if the taxpayer had timely filed amended reports. We held that the commissioner could assess taxes only on income related to the federal adjustments. We did not address whether the commissioner could review a closed year to adjust the magnitude of a loss carryover taken in a subsequent, open year.

Accordingly, we reverse the decision of the BTA because it is unreasonable and unlawful.

*Decision reversed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.