WODA IVY GLEN LIMITED PARTNERSHIP, APPELLANT, *v.* FAYETTE
COUNTY BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Woda Ivy Glen Ltd. Partnership v. Fayette Cty.
Bd. of Revision,* 121 Ohio St.3d 175, 2009-Ohio-762.]

(No. 2008–0312—Submitted February 18, 2009—Decided February 26, 2009.)

**Per Curiam.**

{¶ 1} Appellant, Woda Ivy Glen Limited Partnership ("Ivy Glen"), appeals from a decision of the Board of Tax Appeals ("BTA") that affirmed the value that Fayette County assigned to the parcels at issue for the tax year 2004. The parcels are 60 in number and are improved with single-family homes that were built in 2002. The 60 parcels were developed pursuant to the federal low-income housing tax credit ("LIHTC") enacted in 1986 and codified at Section 42, Title 26 of the United States Code ("I.R.C. 42"). The auditor utilized a cost-based valuation for tax year 2004 with respect to each of the 60 individual parcels. The true value computations equaled approximately $80,000 per parcel and aggregated to approximately $4,854,970 for all 60 parcels.

{¶ 2} On March 30, 2005, Ivy Glen filed its complaint against the auditor's valuation with respect to all 60 parcels, alleging a total true value of $2,400,000. At the board of revision ("BOR") and at the BTA, Ivy Glen sought to value the 60 parcels as an economic unit based on rent-income analysis and comparable sales of rental properties, but both those tribunals rejected that approach. In evaluating the appraisal that Ivy Glen prepared for the BTA hearing, the BTA disregarded the effect of use restrictions imposed under the federal tax-credit program and found that Ivy Glen's appraisal report was deficient and not probative in certain crucial respects. This finding led the BTA to adopt the county's cost-based valuation. The BTA regarded the fact that the houses on the lots were only two years old as supporting the cost-based valuation.

{¶ 3} On appeal to this court, Ivy Glen makes two main contentions. First, Ivy Glen asserts that our case law precludes the adoption of a cost-based valuation because the federal tax subsidy induced the investment in the development, and under pure market conditions, the developer would not have expended such

amounts. Second, Ivy Glen asserts that the BTA erred by rejecting its appraiser's highest-and-best-use determination, which viewed the development as a single economic unit consisting of 60 individual parcels available for rental.

{¶ 4} In response, the county argues that the court should defer to the BTA's rejection of Ivy Glen's appraisal. The county asserts that reverting to the auditor's cost-based valuation is justified by three circumstances: (1) Ivy Glen's failure to offer probative evidence that satisfied its burden of persuasion, (2) the doctrine that the BTA should ignore any restrictions on the transfer and use of the property that were imposed in connection with the federal tax subsidy, and (3) the recency of the construction of the development.

{¶ 5} We hold that under our case law, the BTA erred by failing to consider the federally mandated use restrictions imposed in connection with the LIHTC. That erroneous exclusion led the BTA to reject the appraiser's highest-and-best-use determination, and as a result, the BTA reverted to the county's cost-based valuation. Because it rests on an erroneous legal premise, the BTA's decision must be vacated and the case remanded for additional proceedings as described below.

### Background

{¶ 6} The Ivy Glen development is located in the northwestern portion of Washington Court House in Fayette County near State Route 41. The tract at issue was acquired as two separate parcels, which were then subdivided into 60 individual parcels in connection with the construction and leasing of single-family residences. Ivy Glen includes 59 rental units—modest single-family residential homes with two, three, or four bedrooms—and a manager's unit with an adjoining community building/office.

{¶ 7} At the BTA, Ivy Glen presented the appraisal report and testimony of David E. McConahy. McConahy's report determined that the highest and best use of the property as though vacant is "for residential utilization if special funding is made available," but if such funding were lacking, "then general residential, institutional or secondary commercial utilizations are maximally productive." With the improvements, the highest and best use of the parcels is "[the present] affordable rental housing development, laid out like a detached single-family subdivision." That is so because an "LIHTC or low-income housing tax credit development is predicated on the rents that are affordable to low income residents and the income available is constrained by affordable standards," a fact that "results in a project [that] offers limited direct economic return to the partners."

{¶ 8} The BTA questioned McConahy's economic-unit valuation in light of the principle that property should be valued in its " 'unrestricted form of title.' "

*Woda Ivy Glen Ltd. Partnership v. Fayette Cty. Bd. of Revision* (Jan. 11, 2008), BTA No. 2005–A–749, at 4, quoting *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision* (1988), 37 Ohio St.3d 16, 23, 523 N.E.2d 826. The BTA found it significant that in discussing the lack of market-rate rental-unit comparables, the appraiser stated not only "lack of demand" but "the presence of 'affordable ownership alternatives.' " Id. at 7. The BTA also noted the admitted availability of sales comparisons if the appraiser had viewed the development as individual single-family units rather than as a single economic unit. Id. at 8. In effect, the BTA regarded Ivy Glen as comparable to a development containing single-family owner-occupied housing and believed that the value of Ivy Glen could be properly determined in that manner.

{¶ 9} Closely related to the economic-unit issue is the propriety of the BTA's reverting to a cost-based valuation. The appraiser opined that the cost approach was not tenable in the present case because "this use is not actually feasible or productive as a market rent property and would not be undertaken by a developer." The BTA stated, "[W]e see no reason why a cost approach could not have been completed for the subject units." *Woda Ivy Glen*, BTA No. 2005–A–749, at 8.

{¶ 10} The BTA also faulted McConahy's income approach. In particular, the BTA concluded that the vacancy and rent-loss elements of the income approach "treat[ed] the subject as subsidized housing, not in its unrestricted form of title" inasmuch as McConahy "expresses concern over the smaller number of eligible individuals based upon income levels." *Woda Ivy Glen*, BTA No. 2005–A–749, at 10. In other words, the BTA faulted the income approach for taking into account the use restrictions on the property imposed in connection with the tax subsidy.

{¶ 11} Based on its disagreements with the appraisal and the income studies that Ivy Glen presented to the BOR, the BTA affirmed the county's cost-based valuation of the property.

### Analysis

*1. The BTA's decision is premised on ignoring LIHTC use restrictions.*

{¶ 12} In rejecting Ivy Glen's economic-unit analysis and affirming the auditor's cost-based valuation, the BTA relied on the proposition that when valuing subsidized housing, " 'it is the fair market value of the property in its unrestricted form of title which is to be valued.' " *Woda Ivy Glen*, BTA No. 2005–A–749, at 4, quoting *Alliance Towers, Ltd.*, 37 Ohio St.3d at 23, 523 N.E.2d 826. See also *Delhi Estates, Ltd. v. Hamilton Cty. Bd. of Revision* (1994), 68 Ohio St.3d 192, 194, 625 N.E.2d 594. Yet by reverting to the cost-based valuation, the BTA arguably contravened the principles of the same cases that it purported to apply. See *Colonial Village Ltd. v. Washington Cty. Bd. of Revision*, 114 Ohio St.3d 493,

2007-Ohio-4641, 873 N.E.2d 298, ¶ 20 ("For subsidized housing, we generally disfavor appraisals based on the cost approach"), citing *Canton Towers, Ltd. v. Stark Cty. Bd. of Revision* (1983), 3 Ohio St.3d 4, 7, 3 OBR 302, 444 N.E.2d 1027; *Alliance Towers, Ltd.* at 22, 523 N.E.2d 826; *Sunset Square, Ltd. v. Miami Cty. Bd. of Revision* (1990), 50 Ohio St.3d 42, 44, 552 N.E.2d 632.

{¶ 13} Ivy Glen relies heavily on the disfavor of the cost approach in the case law. Beyond that, its appraiser echoes the proposition that "[f]or purpose [sic] of real estate tax assessment, as set forth in *Oberlin Manor [Ltd.] vs. Lorain County Board of Revision* Supreme Court Case (1989) [45 Ohio St.3d 56, 543 N.E.2d 768], the effect of a property's involvement in a low-income housing program **cannot** be considered." (Boldface sic). Yet in spite of such pronouncements, it strongly appears that the appraiser's valuation of the 60 parcels at issue as an economic unit derives from the use and rent restrictions imposed as a result of the tax credit.[1] Without those restrictions, the 60 parcels' highest and best use as improved would, as the BTA found, entail viewing the 60 parcels separately as potential single-family owner-occupied houses.

{¶ 14} Thus, the central legal issue in the present case lies in determining whether the appraisal of the 60 parcels should take into account the use restrictions imposed in connection with the federal tax credit. In making that determination, we first examine the nature of the LIHTC program. Thereafter, we discuss how the holdings of our prior cases apply to a case involving an LIHTC project.

### 2. I.R.C. 42 conditions the federal tax credit on encumbering the property.

{¶ 15} Although the record is sparse in this regard, it does establish that Ivy Glen is an LIHTC development. In particular, the appraiser McConahy recited that as fact in several parts of his report, and we have held that an appraiser's certification permits a fact-finder to rely on facts asserted in an appraisal report—particularly when, as in this case, those facts are undisputed. *AP Hotels of Illinois, Inc. v. Franklin Cty. Bd. of Revision,* 118 Ohio St.3d 343, 2008-Ohio-2565, 889 N.E.2d 115, ¶ 16. Although the BTA did not make an explicit finding that Ivy Glen is an LIHTC development, the BTA implicitly accepted the tax subsidy as a premise for its analysis. Indeed, that premise constitutes the reason that the BTA found it necessary to consult the case law addressing subsidized housing.

---

1. We have held that "[f]or tax valuation purposes, property with a single owner, for which the highest and best use is a single unit, constitutes a tract, lot, or parcel." *Park Ridge Co. v. Franklin Cty. Bd. of Revision* (1987), 29 Ohio St.3d 12, 29 OBR 231, 504 N.E.2d 1116, paragraph two of the syllabus. See also *Strongsville Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1997), 77 Ohio St.3d 402, 405–406, 674 N.E.2d 696.

{¶ 16} I.R.C. 42 provides federal tax credits tied to amounts invested in qualifying low-income housing projects. The credit is typically enjoyed by one or more entities that become passive investors in a low-income housing development after the developer has formed a limited partnership or limited-liability company. See Joseph Rosenblum, Assessing the Value of Affordability: *Ad Valorem* Taxation of Properties Participating in the Low Income Housing Tax Credit Program (2006), 2 J. Marshall Law School Fair & Affordable Housing Commentary 32, 33 (developers "syndicate" the right to the tax credit to passive investors through limited-liability entities). Each state receives an allocation of tax credits based on its population, and in each state, a particular agency administers the grant of entitlement to the credit. I.R.C. 42(h). By statute, the Ohio Housing Finance Agency is responsible for allocating the federal tax credits to projects in this state. R.C. 175.02(A).

{¶ 17} As a trade-off for the valuable tax credits, I.R.C. 42 imposes severe rent restrictions. Owners must elect to assure either that 20 percent or more of the units are occupied by individuals whose income is 50 percent or less of median gross income in the area, or that 40 percent or more of the units are occupied by individuals whose income is 60 percent or less of the median. I.R.C. 42(g)(1)(A) and (B). Rent is restricted to 30 percent of an imputed income figure based on size of household as prescribed by the statute. The restrictions apply through a "compliance period" of 15 years from the first year the credit is available, and then through an additional "extended low-income housing commitment" period prescribed by the agreement with the state, which must be at least 15 years. I.R.C. 42(h)(6)(D). See Rosenblum at 34 ("LIHTC projects are also subject to agreements with state housing agencies to restrict rents for a period of at least 15 years in excess of the 15–year federal restrictions"). The commitments under the LIHTC program are specifically made binding on successors to the owner and must be recorded in the chain of title to the property. I.R.C. 42(h)(6)(B)(vi); Rosenblum at 34 (to receive the tax credits, the "owner must enter into a recorded regulatory agreement restricting the use of the property"). Violations of the restrictions lead to recapture of the tax credits previously enjoyed, the repayment of taxes previously offset by credits, plus penalties and interest. I.R.C. 42(j); Rosenblum at 36.

{¶ 18} The result is that "LIHTC properties are operating under limited gross potential income because of the restrictions imposed both by the [IRS] and state agencies associated with LIHTC regulations." Rosenblum at 36; see also George Jordan, Appraising the Assets of Low–Income Housing Tax Credit Properties (1999), 67 Appraisal Journal 41, 46 (the "LIHTC stipulations adversely affect the value of the fee simple conditional interest in the *tangible* asset and do not simply divide the benefits or value between the leasehold and leased fee estates." (Emphasis sic)).

*3.  As governmental use restrictions that are imposed for the
general welfare, the LIHTC restrictions should be taken
into account when valuing an LIHTC property.*

{¶ 19} In *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, we confronted the argument that the sale price of a parcel did not directly reflect true value because in purchasing the property, the new owner had agreed to a real covenant that restricted one type of use of the property.  The argument against utilizing the sale price relied heavily on the pronouncement that " 'the fee simple estate is to be valued as if it were unencumbered.' " *Cummins*, ¶ 14, 19, quoting *Alliance Towers, Ltd.*, 37 Ohio St.3d 16, 523 N.E.2d 826, paragraph one of the syllabus. We rejected that argument, and we held that the sale price was indicative of true value in that case.

{¶ 20} Although *Cummins* differed because it addressed a situation in which there was a recent, arm's-length sale, the case does articulate a principle that furnishes the polestar in applying our earlier cases to the situation presented in this case:

{¶ 21} "[T]he uniform rule [in real property taxation] is that property should be valued in accordance with an actual sale price where the criteria of the recency and the arm's-length character of the sale are satisfied.  Where there is no such sale, the uniform rule envisions that an appraisal will be prepared, and constitutional uniformity does not prohibit the differential treatment of encumbrances when property is being appraised in materially different contexts." *Cummins*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 25.

{¶ 22} As discussed, the BTA in this case predicated its decision on the premise that LIHTC restrictions should not be taken into account, and the BTA derived that premise from *Alliance Towers*.  *Alliance Towers, Ltd.*, 37 Ohio St.3d 16, 523 N.E.2d 826, paragraph one of the syllabus ("For real property tax purposes, the fee simple estate is to be valued as if it were unencumbered"). Because *Cummins* held that the imposition of a use restriction did not prevent a sale price from constituting the value of the property, it raises a serious question whether the pronouncement that "the fee simple estate is to be valued as if it were unencumbered" should be applied in a case like the present one.  Indeed, apart from *Alliance Towers* and its progeny, our cases have broadly acknowledged that "all facts and circumstances which may affect the value of property must be taken into consideration." *Porter v. Cuyahoga Cty. Bd. of Revision* (1977), 50 Ohio St.2d 307, 311, 4 O.O.3d 460, 364 N.E.2d 261.  Moreover, whether to use economic rent or contract rent in valuing an apartment building has typically constituted part of the BTA's fact-finding to which the court has

deferred. *Wynwood Apts., Inc. v. Cuyahoga Cty. Bd. of Revision* (1979), 59 Ohio St.2d 34, 37, 13 O.O.3d 19, 391 N.E.2d 346.

{¶ 23} In this case, we need not address the general applicability of the *Alliance Towers* syllabus, because considering the effect of the use restrictions imposed under I.R.C. 42 on the value of the parcels fully comports with the principle set forth there. That is so because the standards for appraising property call for a valuation of the "fee simple estate" to be performed as if that estate were free from *private* encumbrances, but they nonetheless require an appraiser to consider "police power" limitations on use. Appraisal Institute, The Appraisal of Real Estate (12th Ed.2001) 71. Even after *Alliance Towers*, we have acknowledged that governmental restrictions must be taken into account. Cf. *Muirfield Assn., Inc. v. Franklin Cty. Bd. of Revision* (1995), 73 Ohio St.3d 710, 711, 654 N.E.2d 110 (rule that fee simple should be valued as if unencumbered is "subject only to the limitations caused by involuntary, governmental actions, such as eminent domain, escheat, police power, and taxation").

{¶ 24} As for "police power," that term refers to the "right of government through which property is regulated to protect public safety, health, morals, and general welfare." The Appraisal of Real Estate at 69. Do the use restrictions that accompany LIHTCs qualify as "police power" restrictions? Careful analysis reveals that they do. It is true that the federal government exercises no general police power. *United States v. Lopez* (1995), 514 U.S. 549, 566, 115 S.Ct. 1624, 131 L.Ed.2d 626 (U.S. Constitution "withhold[s] from Congress a plenary police power that would authorize the enactment of every type of legislation"). But it is also true that Congress exercises the power to tax and spend pursuant to the first clause of Section 8, Article 1 of the United States Constitution, and does so in order to provide, among other things, for the "general Welfare" of the nation. The use restrictions mandated by I.R.C. 42 in connection with the federal tax credits plainly constitute such legislation, and the fact that such restrictions are triggered by the developer's decision to seek the benefit of the tax credits does not reduce them to the status of contract obligations. See *Westside Mothers v. Haveman* (C.A.6, 2002), 289 F.3d 852 (rejecting the district court's holding that Medicaid constituted a mere contract between state and federal governments on the grounds that " '[u]nlike normal contractual undertakings, federal grant programs originate in and remain governed by statutory provisions expressing the judgment of Congress concerning desirable public policy,' " quoting *Bennett v. Kentucky Dept. of Edn.* (1985), 470 U.S. 656, 669, 105 S.Ct. 1544, 84 L.Ed.2d 590).

{¶ 25} Finally, we note that viewing LIHTC use restrictions as governmental limitations imposed for the general welfare broadly accords with the decisions of our sister courts in other states. See, e.g., *Bayridge Assocs. Ltd. Partnership v. Dept. of Revenue* (1995), 321 Or. 21, 27, 892 P.2d 1002; *Town Square Ltd.*

*Partnership v. Clay Cty. Bd. of Equalization*, 2005 SD 99, 704 N.W.2d 896, ¶ 1 (court holds that both the tax credits and the restrictions ought to be considered because both constituted the owner's manner of realizing value from the realty).[2]

{¶ 26} Our conclusion that the tax assessor must consider the effect the LIHTC use restrictions exercise on the value of the property does not disturb the specific holding of *Alliance Towers, Ltd.*, 37 Ohio St.3d 16, 523 N.E.2d 826, and its progeny. First, we note that our decision in *Alliance Towers* actually addressed several BTA cases. In each, the BTA had adopted a valuation somewhere between the values that had been determined by competing apprais-als. Id. at 22, 523 N.E.2d 826. Each of the BTA decisions involved the value of apartment complexes constructed under the federal Section 8 programs that (1) furnished affirmative assistance in the financing of the residential facilities and (2) supplemented the rent paid by low-income tenants whose payments (as in the LIHTC program) were limited to a percentage of their income. In addition, developers received a strong tax incentive through the accelerated depreciation made available in relation to the program. Id. at 20, 523 N.E.2d 826, fn. 4.

{¶ 27} The court discerned a common thread connecting the BTA decisions: the BTA had relied on appraisals that took into account the affirmative benefit of the federal subsidies as part of the value of the respective properties — an approach that increased the value assigned to the properties. Although broadly stating the generalization that "[i]t is the fair market value of the property in its unrestricted form of title which is to be valued," *Alliance Towers, Ltd.*, 37 Ohio St.3d at 23, 523 N.E.2d 826, the court's objections to BTA's valuations consisted of three much more concrete points. First, the court stated that "tax shelter advantages" constituted "intangible items" that "[did] not make the real estate more valuable." Id. Second, the court questioned using a putative assumption of the mortgage balance as a basis for determining the property's value. Because "the government is willing to provide the subsidy to pay the debt service," mortgage and expense payments became manageable, and "the terms of the assumption of the mortgage would not seem to have any effect upon the value of the property." Id. Third, the "contract rents" in subsidized housing "are a combination of the amount paid by the tenant and the amount paid by the government," and as such, they "are artificially derived without any relation to the market." Id. at 23–24, 523 N.E.2d 826. Indeed, the court observed that pursuant to federal regulation, the "owner does not keep this total rent as profit;

---

2. As detailed by the South Dakota Supreme Court in *Town Square*, the principal dispute among the state courts lies not in whether the use restrictions must be accounted for, but whether the tax credits must also figure into the valuation. For the reasons set forth in footnote 4, below, our precedent indicates that the credits should not be viewed as pertaining to the realty.

he receives only a limited distribution and after-tax benefits." Id. at 24, 523 N.E.2d 826.

{¶ 28} All of these considerations led the court to conclude that the BTA should value Section 8 properties in accordance with methods that disregarded the affirmative value of the subsidies conferred by the federal government. *Alliance Towers, Ltd.*, 37 Ohio St.3d at 24, 523 N.E.2d 826. All our subsidized housing cases that have followed *Alliance Towers* apply that reasoning.[3]

{¶ 29} Thus, in spite of the sweeping language of *Alliance Towers*, the plain import of the decision lies in preventing the *affirmative benefit of government subsidies* from inflating the value of the property for tax purposes. In the present case, that precept would call into question any attempt to regard the value of the tax credits to the limited partners as part of the value of the real estate. But that does not prevent the tax assessor from considering the effect of concomitant use restrictions imposed under I.R.C. 42—restrictions that the statute requires to be recorded in the chain of title.[4]

---

3. See *Oberlin Manor, Ltd. v. Lorain Cty. Bd. of Revision* (1989), 45 Ohio St.3d 56, 57, 543 N.E.2d 768 (relying on *Alliance Towers*, 37 Ohio St.3d at 22, 523 N.E.2d 826, to hold that "the BTA erred when it based its value determination on the subsidized nature of the property" and stating that "[w]ithout the government rent subsidies, the developer would not have sufficient rental income under conventional market conditions to repay the mortgage"); *Sunset Square, Ltd. v. Miami Cty. Bd. of Revision* (1990), 50 Ohio St.3d 42, 44, 552 N.E.2d 632 (because of "federal participation in financing construction," the case law "approved the income approach to valuation, while rejecting the cost approach as inapplicable"); *Delhi Estates, Ltd. v. Hamilton Cty. Bd. of Revision* (1994), 68 Ohio St.3d 192, 194, 625 N.E.2d 594 (quoting *Alliance Towers* at 23, 523 N.E.2d 826, that " 'contract rents' " in subsidized housing " 'are artificially derived,' " and on that basis requiring that "market or conventional rentals and expenses be utilized to the exclusion of contract or actual rentals and expenses"); *Loveland Pines v. Hamilton Cty. Bd. of Revision* (1993), 66 Ohio St.3d 387, 388–389, 613 N.E.2d 191 (affirming BTA decision that rejected an income approach that relied in part on actual rent).

4. As for the tax credits themselves, we discern ample reason to disregard them as constituting a part of the value of the realty to the extent that tax benefits are transferred apart from any transfer of the underlying fee interest in the property. As discussed, the method of pursuing an LIHTC development involves "syndicating" the credit by selling passive investment (in this case limited-partner) interests to entities that can benefit from the tax credit. This means that (1) the proportionate interest in the tax credits themselves is transferred apart from any transfer of the entire legal fee interest in the property, and (2) the value that the purchaser places on the credit is driven primarily by the purchaser's particular tax considerations rather than any future value anticipated from the real property itself. As a result, the tax credits qualify as intangible interests separable from the real property. Cf. *St. Bernard Self-Storage, L.L.C. v. Hamilton Cty. Bd. of Revision*, 115 Ohio St.3d 365, 2007-Ohio-5249, 875 N.E.2d 85, ¶ 19, 21, 24, 25; *AEI Net Lease Income & Growth Fund v. Erie Cty. Bd. of Revision*, 119 Ohio St.3d 563, 2008-Ohio-5203, 895 N.E.2d 830, ¶ 29, 30; accord *Goodyear Tire & Rubber Co. v. Limbach* (1991), 61 Ohio St.3d 381, 384, 575 N.E.2d 146 (party to "safe harbor" sale-leaseback of tangible property who enjoyed the tax benefit of accelerated depreciation of that property had purchased an intangible tax benefit, not the actual ownership of the tangible assets).

{¶ 30} In light of the foregoing discussion, we hold that in the context of appraising real property for tax purposes, the use restrictions imposed under I.R.C. 42 constitute governmental restrictions for the general welfare that must be taken into account when determining the value of LIHTC property. The BTA erred by holding that the effect of such restrictions must be disregarded and by reverting to a cost-based valuation that improperly reflects the affirmative benefit of the tax credits, which constitute a separable intangible asset. Accordingly, we must vacate the BTA's decision and remand for further proceedings.

*4. On remand, the BTA shall consider the effect of the use restrictions on the value of the parcels.*

{¶ 31} Reading our prior cases, the BTA and the parties misconstrued the pronouncements of *Alliance Towers, Ltd.,* 37 Ohio St.3d 16, 523 N.E.2d 826. The BTA's evaluation of Ivy Glen's appraisal and, in particular, its finding on the issue whether the parcels constitute an "economic unit" reflect its misapplication of *Alliance Towers.* But the misreading of *Alliance Towers* not only informed the BTA's review of Ivy Glen's appraisal, it also appears to have induced Ivy Glen to offer an incomplete analysis of the value of the property. In particular, Ivy Glen did not offer specific evidence concerning the use restrictions imposed under I.R.C. 42 and its agreement with the Ohio Housing Finance Agency.

{¶ 32} When this court clarifies the legal standards that apply in a particular case and then remands the case to the BTA, the board typically has discretion to hear additional evidence or to decline to do so, as the board deems appropriate. *Lakeside Truck Rental, Inc. v. Bowers* (1963), 174 Ohio St. 405, 407, 23 O.O.2d 47, 189 N.E.2d 723 (on remand, BTA "could very well have opened up the case and heard additional evidence" in light of earlier decision of the court); *Cincinnati v. Budget Comm. of Hamilton Cty.* (1988), 35 Ohio St.3d 254, 256, 520 N.E.2d 216 ("it is not always necessary for the BTA to open the record on remand and hear additional evidence"); accord *United Tel. Co. of Ohio v. Tracy* (1999), 84 Ohio St.3d 506, 511, 705 N.E.2d 679 (five justices agreed that hearing additional evidence on remand was not barred under circumstances of the case).[5] We have determined that we must vacate the BTA's decision so that the BTA can determine the effect that the I.R.C. 42 use restrictions have on the value of the parcels at issue. In doing so, the BTA may find the current record insufficient,

---

5. In *HealthSouth Corp. v. Levin,* 121 Ohio St.3d 282, 2009-Ohio-584, 903 N.E.2d 1179, 2009 WL 415570, we directed the BTA to confine itself on remand to the existing record. That case, unlike the present case and the cases cited above, did not involve the court's correction of an erroneous legal standard applied by the BTA. In *HealthSouth,* we held that the BTA failed to perform its ordinary duty to "state what evidence it considered relevant in reaching" its determination. Id. at ¶ 34, citing *Howard v. Cuyahoga Cty. Bd. of Revision* (1988), 37 Ohio St.3d 195, 197, 524 N.E.2d 887.

particularly with respect to the scope of the restrictions and related matters. Accordingly, the BTA may find it necessary to receive additional evidence.

{¶ 33} We therefore vacate the BTA's decision and remand the case for (1) the hearing of additional evidence concerning the federal restrictions that applied to the property and their effect on the property's value, if the BTA decides that additional evidence is needed on these points, (2) a redetermination by the BTA of the issue of highest and best use on the basis of all the evidence before it, and (3) a reconsideration of the probative value of all elements of the appraisal, of the income studies presented to the BOR, and of any supplemental evidence taken, in light of the modification—if any—that BTA makes to its highest-and-best-use determination.

## Conclusion

{¶ 34} For all the foregoing reasons, the BTA erred by valuing Ivy Glen's property without regard to the effect of federally imposed use restrictions. We vacate and remand so that the BTA may conduct further proceedings in accordance with this decision.

Decision vacated
and cause remanded.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

---

Karen H. Bauernschmidt and Sam A. Benson, for appellant.

Rich & Gillis Law Group, L.L.C., and James R. Gorry, for appellees Fayette County Auditor and Fayette County Board of Revision.

Porter, Wright, Morris & Arthur, L.L.P., and Kathleen M. Trafford, urging reversal for amici curiae, Ohio Capital Corporation for Housing, Coalition on Housing and Homelessness in Ohio, Ohio Community Development Corporation Association, and Council for Rural Housing and Development of Ohio.